UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JUSTIN KING, on behalf of himself and all others similarly situated, | **Class Action Complaint** |
| Plaintiff, | **Demand for Jury Trial** |
| vs. | No. 1:17-cv-3157 |
| EQUIFAX, INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Justin King, by counsel, on behalf of himself and all others similarly situated, alleges:

## NATURE OF THE CASE

1.  Between mid-May and July 2017, Equifax, Inc. ("Equifax") was subject to one of the largest data breaches in history (the "Equifax data breach"), when hackers stole the personal and financial information of 143 million U.S. consumers. The personal and financial information obtained by the hackers includes names, social security numbers, birth dates, addresses, and some driver's license information. Equifax also stated the credit card account numbers of nearly 209,000 U.S. consumers was also exposed. Equifax learned of the breach on July 29, 2017, but did not disclose the breach to the public until September 7, 2017. Three Equifax senior executives sold shares worth nearly $2 million in the days after the company learned of the data breach.

2. Equifax's conduct—failing to take adequate and reasonable measures to ensure its data systems were protected, failing to take available steps to prevent and stop the breach from ever happening, failing to disclose to its customers the material facts that it did not have adequate computer systems and security practices to safeguard U.S. consumers' personal data, and failing to provide timely and adequate notice of the Equifax data breach—has caused substantial harm and injuries to 143 million consumers across the United States.

3. As a result of the Equifax data breach, 143 million U.S. consumers have been exposed to fraud and these consumers have been harmed. The injuries suffered by the proposed Class as a direct result of the Equifax data breach include: theft of their personal and financial information; costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts; costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Equifax data breach; the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their personal and financial information being placed in the hands of hackers; damages to and diminution in value of their personal and financial information entrusted to

Equifax for the sole purpose of Equifax's credit-reporting services and with the mutual understanding that Equifax would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; money paid to Equifax for credit-reporting services during the period of the Equifax data breach in that Plaintiff and Class members would not have obtained, or permitted others to obtain, Equifax's credit-reporting services had Equifax disclosed that it lacked adequate systems and procedures to reasonably safeguard consumers' financial and personal information and had Equifax provided timely and accurate notice of the Equifax data breach; overpayments paid to Equifax for credit-reporting services in that a portion of the price paid by Plaintiff and the Class, or others on their behalf, to Equifax was for the costs of Equifax providing reasonable and adequate safeguards and security measures to protect customers' financial and personal data, which Equifax did not do, and as a result, Plaintiff and members of the Class did not receive what was paid for and Equifax overcharged; and continued risk to their financial and personal information, which remains in the possession of Equifax and which is subject to further breaches so long as Equifax fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data in its possession.

4. Plaintiff seeks to remedy these harms, and prevent their future occurrence, on behalf of himself and all similarly situated consumers whose account and/or personal identifying information was stolen as a result of the Equifax data breach. Plaintiff asserts claims against Equifax for violations of the

Fair Credit Reporting Act, Indiana's consumer laws, negligence, and unjust enrichment. On behalf of himself and all similarly situated consumers, Plaintiff seeks to recover damages, including actual and statutory damages, and equitable relief, restitution, disgorgement, costs, and reasonable attorney fees.

## PARTIES

5. Plaintiff Justin King resides in New Whiteland, Indiana and is a citizen of Indiana. Earlier this year he obtained a credit report from Equifax and, in order to dispute certain items on that report, was required to verify certain of his personal information via Equifax's website.

6. Plaintiff's personal and financial information was compromised as a result of the Equifax data breach. Plaintiff was harmed by having his financial and personal information compromised.

7. Plaintiff would not have given, or would not have allowed others to have given, his personal and financial information to Equifax to obtain credit-reporting services had Equifax told him that it lacked adequate computer systems and data security practices to safeguard consumers' personal and financial information from theft, and had Equifax provided him with timely and accurate notice of the Equifax data breach.

8. Plaintiff suffered actual injury from having his financial and personal information compromised and stolen in and as a result of the Equifax data breach.

9. Defendant Equifax, Inc. is one of three nationwide credit-reporting companies that track and rates the financial history of U.S. consumers. Equifax is

supplied with data about loans, loan payments and credit cards, as well as information on everything from child support payments, credit limits, missed rent and utilities payments, addresses and employer history, which all factor into credit scores. Equifax is incorporated in Delaware and headquartered in Atlanta, Georgia, therefore it is a citizen of Delaware and Georgia.

## JURISDICTION & VENUE

10. This Court has federal question jurisdiction under 28 U.S.C. § 1331 in light of the Fair Credit Reporting Act alleged below; supplemental jurisdiction over state claims exists under 28 U.S.C. § 1367. This Court also has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff and many members of the class are citizens of states different from the Defendant.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Equifax regularly transacts business here; and some of the Class members reside in this district. The causes of action for the putative Class Members also arose, in part, in this district.

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. The requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) are met with respect to the Class defined below.

13. The Plaintiff Class consists of all persons whose personal information was compromised by the data breach first disclosed by Equifax on September 7, 2017.

14. The Class is so numerous that joinder of all members is impracticable. The Class includes 143 million individuals whose personal and financial information was compromised by the Equifax data breach.

15. There are numerous questions of law and fact common to Plaintiff and the Class, including the following:

- whether Equifax engaged in the wrongful conduct alleged herein;
- whether Equifax's conduct was deceptive, unfair, unconscionable and/or unlawful;
- whether Equifax owed a duty to Plaintiff and members of the Class to adequately protect their personal and financial information and to provide timely and accurate notice of the Equifax data breach to Plaintiff and members of the Class;
- whether Equifax breached its duties to protect the personal and financial information of Plaintiff and members of the Class by failing to provide adequate data security and whether Equifax breached its duty to provide timely and accurate notice to Plaintiff and members of the Class;
- whether Equifax knew or should have known that its computer systems were vulnerable to attack;

- whether Equifax's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of millions of consumers' personal and financial data;

- whether Equifax unlawfully failed to inform Plaintiff and members of the Class that it did not maintain computers and security practices adequate to reasonably safeguard consumers' financial and personal data and whether Equifax failed to inform Plaintiff and members of the Class of the data breach in a timely and accurate manner;

- whether Plaintiff and members of the Class suffered injury, including ascertainable losses, as a result of Equifax's conduct (or failure to act);

- whether Plaintiff and members of the Class are entitled to recover damages;

- whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or other equitable relief.

16.    Plaintiff's claims are typical of the claims of the Class in that the representative Plaintiff, like all Class members, had his personal and financial information compromised in the Equifax data breach.

17.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who is experienced in class-action and complex litigation. Plaintiff has no interests that are adverse to, or in conflict with, other members of the Class.

18. The questions of law and fact common to the Class Members predominate over any questions which may affect only individual members.

19. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy.

20. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Equifax. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## FACTS

21. Credit reporting companies, like Equifax, have an obligation to maintain the security of U.S. consumers' personal and financial information, which Equifax itself recognizes with its Privacy Policy:

> For more than 100 years, Equifax has been a catalyst for commerce by bringing businesses and consumers together. Equifax also provides products and services that bring businesses together with other businesses.
>
> We have built our reputation on our commitment to deliver reliable information to our customers (both businesses and consumers) and to

protect the privacy and confidentiality of personal information about consumers. We also protect the sensitive information we have about businesses. Safeguarding the privacy and security of information, both online and offline, is a top priority for Equifax

(http://www.equifax.com/privacy/ (last visited Sept. 8, 2017).)

22.   Equifax further promises to consumers that "[w]e will not disclose your personal information to third parties except to provide you with the disclosure or service you request . . ." (http://www.equifax.com/privacy/personal-credit-reports (last visited Sept. 8, 2017).) Equifax also promises that it is "committed to protecting the security of your information through procedures and technology designed for this purpose." (*Id.*)

23.   Unfortunately, Equifax didn't meet the promises it made. On September 7, 2017, Equifax announced the Equifax data breach. Equifax admitted that "[c]riminals exploited a U.S. website application vulnerability to gain access to certain files. Based on the company's investigation, the unauthorized access occurred from mid-May through July 2017." (https://www.equifaxsecurity2017.com/ (last visited Sept. 8, 2017).)

24.   Equifax admitted that the Equifax data breach impacted 143 million U.S. consumers and "[t]he information accessed primarily includes names, Social Security numbers, birth dates, addresses and, in some instances, driver's license numbers. In addition, credit card numbers for approximately 209,000 U.S. consumers, and certain dispute documents with personal identifying information for approximately 182,000 U.S. consumers, were accessed." (*Id.*)

9

25. Equifax discovered the breach on July 29, 2017, but did not notify the public until September 7, 2017. (*Id.*)

26. Individual affected customers still have not been personally notified by Equifax about the Equifax data breach.

27. Equifax hasn't said when it will start personally notifying consumers.

28. Equifax claims that consumers can determine if their information has been impacted by going to Equifax's website and providing the consumer's last name and the last **six** digits of their Social Security number. (https://www.washingtonpost.com/news/ the-switch/wp/2017/09/08/after-data-breach-equifax-asks-consumers-for-social-security-numbers-to-see-if-theyve-been-affected/?utm_term=.8f715fc1d35b (last visited Sept. 8, 2017).) However, consumers that complete this process aren't told whether their personal data was impacted. (*Id.*) Instead, they receive an enrollment date for a credit monitoring program. (*Id.*)

29. Social security numbers, which Equifax admits were obtained in the Equifax data breach, are a particularly popular target for hackers. Combinations of Social Security numbers, birth dates and names sell for more than even credit card numbers in an increasingly sophisticated black market, where such information is sold and resold through popular auction sites.

30. Three Equifax executives sold their Equifax stock after the Equifax data breach, but before the breach was disclosed to the public.

(http://www.marketwatch.com/story/equifax-executives-sold-stock-after-data-breach-before-informing-public-2017-09-07 (last visited Sept. 8, 2017).)

## COUNT I – WILLFUL VIOLATION OF
## THE FAIR CREDIT REPORTING ACT

31.  Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

32.  Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

33.  Equifax is a consumer reporting agency under the FCRA because it, for monetary fees, regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

34.  Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for -- (A) credit . . . to

be used primarily for personal, family, or household purposes; . . . or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1).

35. The compromised data was a consumer report under the FCRA because it was a communication of information bearing on class members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used for the purpose of serving as a factor in establishing the class members' eligibility for credit.

36. As a consumer reporting agency, Equifax is required to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a).

37. None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to disclose consumer reports to unauthorized individuals such as computer hackers.

38. Equifax willfully and/or recklessly failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. Equifax's willful and/or reckless conduct is supported by the fact that Equifax's core business model involves data compilation and analysis, thus Equifax was well aware of the importance of and risks to data security.

39. Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain Plaintiff's and class members' personal information for no permissible purposes under the FCRA.

40. Plaintiff and class members have been damaged by Equifax's willful and/or reckless violation of the FCRA.

41. Plaintiff and class members are entitled to recover "any actual damages sustained by the consumer . . . or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

42. Plaintiff and class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2), (3).

## COUNT II – NEGLIGENT VIOLATION
## OF THE FAIR CREDIT REPORTING ACT

43. Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

44. Equifax was negligent in failing to maintain reasonable procedures to protect Plaintiff's and class members' personal information and consumer reports.

45. Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiff's and class members' personal information and consumer reports for no permissible purposes under the FCRA.

46. Plaintiff and class members have been damaged by Equifax's negligent violation of the FCRA.

47. Plaintiff and class members are entitled to recover "any actual damages sustained by the consumer." 15 U.S.C. § 1681o(a)(1).

48. Plaintiff and class members are also entitled to recover their costs of the action, as well as reasonable attorneys' fees. 15 U.S.C. § 1681o(a)(2).

## COUNT III – NEGLIGENCE

49. Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

50. Equifax owed a duty to Plaintiff and members of the Class to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting their personal and financial information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. This duty included, among other things, designing, maintaining, and testing Equifax's security systems to ensure that Plaintiff's and Class members' personal and financial information in Equifax's possession was adequately secured and protected. Equifax further owed a duty to Plaintiff and Class members to implement processes that would detect a breach of its security system in a timely manner and to timely act upon warnings and alerts.

51. Equifax owed a duty, as articulated in its privacy practices, to protect U.S. consumers' sensitive financial and personal information.

52. Equifax owed a duty to timely disclose the material fact that Equifax's computer systems and data security practices were inadequate to safeguard consumers' personal and financial data from theft.

53. Equifax breached these duties by the conduct alleged in the Complaint by, including without limitation, (a) failing to protect U.S. consumers' personal and financial information; (b) failing to maintain adequate computer systems and data security practices to safeguard customers' personal and financial

information; (c) failing to disclose the material fact that Equifax's computer systems and data security practices were inadequate to safeguard customers' personal and financial data from theft; and (d) failing to disclose in a timely and accurate manner to Plaintiff and members of the Class the material fact of the Equifax data breach.

54. The conduct alleged in the Complaint caused Plaintiff and Class members to be exposed to fraud and be harmed. The injuries suffered by the Plaintiff and the proposed Class as a direct result of the Equifax data breach include: theft of their personal and financial information; costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts; costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Equifax data breach; the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their personal and financial information being placed in the hands of hackers; damages to and diminution in value of their personal and financial information entrusted to Equifax for the sole purpose of Equifax's credit-reporting services and with the mutual understanding that Equifax would safeguard Plaintiff's and Class

members' data against theft and not allow access and misuse of their data by others; money paid to Equifax for their services during the period of the Equifax data breach in that Plaintiff and Class members would not have obtained, or permitted others to obtain, Equifax's credit-reporting services had Equifax disclosed that it lacked adequate systems and procedures to reasonably safeguard consumers' financial and personal information and had Equifax provided timely and accurate notice of the Equifax data breach; overpayments paid to Equifax for credit-reporting services in that a portion of the price paid by Plaintiff and the Class, or others on their behalf, to Equifax was for the costs of Equifax providing reasonable and adequate safeguards and security measures to protect customers' financial and personal data, which Equifax did not do, and as a result, Plaintiff and members of the Class did not receive what was paid for and Equifax overcharged; and continued risk to their financial and personal information, which remains in the possession of Equifax and which is subject to further breaches so long as Equifax fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data in its possession.

## COUNT IV – VIOLATION OF INDIANA DECEPTIVE CONSUMER SALES ACT

55. Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

56. Equifax's conduct as alleged in this Complaint violated Ind. Code § 24-5-0.5-3(b)(1), (2), including without limitation that (a) Equifax represented that it

protected U.S. consumers' personal and financial information, but Equifax failed to protect that sensitive information; (b) Equifax's failure to maintain adequate computer systems and data security practices to safeguard consumers' personal and financial information; (c) Equifax's failure to disclose the material fact that Equifax's computer systems and data security practices were inadequate to safeguard consumers' personal and financial data from theft; and (d) Equifax's failure to disclose in a timely and accurate manner to Plaintiff and members of the Class the material fact of the Equifax data breach.

57. Plaintiff and Class members relied on Equifax's misrepresentations.

58. Equifax's deceptive acts were done as part of a scheme, artifice, or device with intent to defraud or mislead and constitute incurable deceptive acts under Ind. Code § 24-5-0.5-1 *et seq*.

59. Plaintiff and Class members are entitled to $1,000 or treble damages, reasonable attorneys' fees, costs of suit, an ordering enjoining Equifax's unlawful practices, and any other relief which the Court deems proper.

## COUNT V – UNJUST ENRICHMENT

60. Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

61. Plaintiff and Class members, or others acting on behalf of Plaintiff and Class members, conferred a monetary benefit on Equifax in the form of monies paid for credit-reporting services.

62. The monies paid by or on behalf of the Plaintiff and Class were supposed to be used by Equifax, in part, to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiff and Class members' data.

63. Equifax failed to provide reasonable security, safeguards, and protections to the personal and financial information of Plaintiff and Class members, and as a result Equifax was overpaid.

64. Under principles of equity and good conscience, Equifax should not be permitted to retain that overpayment because Equifax failed to provide adequate safeguards and security measures to protect Plaintiff's and Class members' personal and financial information.

65. Equifax wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

66. Equifax's enrichment at the expense of Plaintiff and Class Members is and was unjust.

67. As a result of Equifax's wrongful conduct, as alleged above, Plaintiff and the Class are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by Equifax.

**RELIEF REQUESTED**

Plaintiff, on behalf of himself and all others similarly situated, requests that the Court enter judgment against Equifax, as follows:

1. An award to Plaintiff and the Class of compensatory, direct, consequential, statutory, and incidental damages;

2. An award of attorneys' fees, costs, and expenses, as provided by law, or equity, or as otherwise available;

3. An award of pre-judgment and post-judgment interest, as provided by law or equity; and

4. Such other or further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 8, 2017					Respectfully submitted,


								/s/ Lynn A. Toops
								Irwin B. Levin, No. 8786-49
								Richard E. Shevitz, No. 12007-49
								Scott D. Gilchrist, No. 16720-53
								Vess A. Miller, No. 26495-53
								Lynn A. Toops, No. 26386-49A
								COHEN & MALAD, LLP
								One Indiana Square, Suite 1400
								Indianapolis, IN 46204
								Telephone: (317) 636-6481
								Fax: (317) 636-2593
								ilevin@cohenandmalad.com
								rshevitz@cohenandmalad.com
								sgilchrist@cohenandmalad.com
								vmiller@cohenandmalad.com
								ltoops@cohenandmalad.com

								*Counsel for Plaintiff and the*
								*Proposed Plaintiff Class*